# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

___

**JERRY J. MEEKS**,

       **Plaintiff,**

v.                                                           Case No. 14-CV-850

**TOM FELDNER, et al.,**

       **Defendants.**

___

## DECISION AND ORDER

Plaintiff Jerry J. Meeks, who is representing himself, is currently incarcerated at Oshkosh Correctional Institution. He filed this lawsuit pursuant to 42 U.S.C. § 1983 and was granted leave to proceed on his claims that defendants[1] Tom Feldner and Easton Lind failed to protect him from harm in violation of the Eighth Amendment to the U.S. Constitution.

On December 22, 2016, defendants filed a motion for summary judgment. Plaintiff requested to extend the deadline by which he was to respond to the motion, which I allowed on January 5, 2016. However, rather than filing a response to the motion, plaintiff filed his own motion for summary judgment on March 3, 2016, more than two months after the dispositive motion deadline. Defendants moved to strike plaintiff's filing on March 16, 2016; they also filed a reply brief in support of their own motion. Because plaintiff's motion for summary judgment was untimely and fails to comply with the requirements of Civil Local Rule 56, I will deny his motion for summary

---

[1] I allowed plaintiff to proceed against Tom Feldner, Easton Lind, and "PCT Dave." Plaintiff failed to identify "PCT Dave," and he was never served in the course of this action. I dismiss plaintiff's claims against "PCT Dave" based on plaintiff's failure to diligently pursue his claims against him. See Civil Local Rule 41(c).

judgment. However, because plaintiff is representing himself and likely unfamiliar with the court's procedural requirements, I will deny defendants' motion to strike and construe plaintiff's filing as a response to defendants' motion.

## I. FACTS[2]

### A. Parties and Claims

Plaintiff is a Wisconsin Department of Corrections ("DOC") inmate who was housed at the Wisconsin Resource Center ("WRC") during the times relevant to this lawsuit. (Docket #45 ¶1.) The WRC is a medium-security facility of the Wisconsin Department of Health Services that provides individualized mental health care for inmates serving criminal sentences. (*Id.* at ¶4.) Inmates may be transferred from a DOC institution to the WRC because their behavior poses problems to themselves or others in the correction environment where appropriate treatment may not be available. (*Id.*)

At the relevant time, Feldner and Lind were employed by the Wisconsin Department of Health Services as Psychiatric Care Technicians ("PCT") at the WRC. (*Id.* at ¶2, 3.) PCTs report and document observations of inmates' attitudes, behaviors and programmatic functioning in compliance with required monitoring, record keeping, and reporting. (*Id.* at ¶6.) They also assist in maintaining the security and cleanliness of assigned units, make recommendations for Treatment Learning Plans, and assist new inmates by orienting them to the unit rules, policies and procedures. (*Id.*)

---

[2] Facts are taken from Defendants' Proposed Findings of Fact (Docket #45) and plaintiff's sworn response to defendants' motion for summary judgment (Docket #52 at 1-2). The facts are undisputed unless indicated otherwise.

2

I allowed plaintiff to proceed on an Eighth Amendment claim that Feldner and Lind failed to protect him from sexual advances and contact by another inmate. (*Id*. at ¶5.)

**B. January 23, 2013 Incident**

On January 23, 2013, Feldner and Lind were working on the H unit at WRC during the second shift, which runs from 2:00 p.m. until 10:00 p.m. (*Id*. at ¶7.) Defendants were familiar with plaintiff and another inmate, Caballero, who were housed on that unit. (*Id*.)

Plaintiff alleges that Caballero began to speak to him sexually, to which plaintiff responded in a loud voice, "Jose, I don't like you in a sexual way so stop asking me can you have sex with me." (*Id*. at ¶8.) Plaintiff alleges that defendants did nothing, so he continued to pace the dayroom and hallway. (Docket # 52 ¶6.) Caballero followed plaintiff and again asked him to have sex with him; plaintiff threatened to hurt Caballero if he did not leave him alone. (*Id*. at ¶7.) Plaintiff states that Caballero began rubbing himself and then grabbed plaintiff's buttocks. (*Id*. at ¶8.) Plaintiff then walked to his cell, but Caballero forced his way in and grabbed plaintiff. (*Id*. at ¶9.) Plaintiff states that he pushed his way out of his cell and yelled down to defendants, who "didn't act on his alert bec[ause] 20 min[utes] later they let [Caballero] sit next to [him] at dinner." (*Id*. at 11.) Plaintiff states that they then took Caballero off the unit. (*Id*.)

According to Feldner, at about 6:00 p.m., plaintiff told him that "someone had grabbed his ass." (Docket 45 ¶10.) Plaintiff then locked into his cell for the evening count. (*Id*.) Once the count was completed, plaintiff came out of his cell to make a previously arranged telephone call, which Feldner supervised. (*Id*. at ¶11.) When the

3

call was over, plaintiff told Feldner that earlier that day, at about 4:30 p.m., Caballero had grabbed his buttocks and told plaintiff he loved him. (*Id.*) Feldner states that plaintiff was visibly agitated and disclosed that he had been abused as a child and that the incident was causing him great stress. (*Id.* at ¶13.)

Feldner reported the allegations to his supervisor. (*Id.* at ¶14.) Both inmates were secured so the supervisor could review video footage as part of her investigation into plaintiff's allegations. (*Id.*) After reviewing the video, the supervisor instructed Feldner to remove Caballero from the housing unit and write a report documenting plaintiff's complaint. (*Id.*) The supervisor wrote a conduct report against Caballero for the inappropriate behavior. (*Id.* at ¶15.)

Feldner states that he did not see the incident between plaintiff and Caballero and did not know anything about it until plaintiff reported it to him about two hours after it happened. (*Id.* at ¶16.) Feldner also states that he did not see any inappropriate conduct by Caballero toward plaintiff at any time prior to the incident. (*Id.*) Feldner's involvement ended once he completed his report and provided it up the chain of command to his supervisor for further investigation. (*Id.* at ¶24.) Feldner did not participate in the investigation. (*Id.*)

Lind states that she did not see the incident, nor did she participate in the investigation that occurred after the incident. (*Id.* at ¶19.) Lind's only involvement was to prepare the written documents to transfer Caballero from the H unit to a different location. (*Id.*) Lind believes Feldner informed her that plaintiff had accused Caballero of having inappropriately touched him and of making sexually inappropriate comments to him. (*Id.* at ¶17.)

4

Defendants state that they try to keep inmates safe and secure, but it is not physically possible to have eyes on every single inmate at any given time. (*Id.* at ¶23.) According to defendants, inmates moving in group areas present particular challenges because anytime inmates have close physical proximity, there is the potential for problems. (*Id.*)

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed, or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

5

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"A prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate. Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Dale v. Poston*, 548 F.3d 563, 569-70 (7th Cir. 2008). To sustain an Eighth Amendment failure to protect claim, a plaintiff must satisfy a two-prong test: (1) the inmate must demonstrate that he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) the inmate must demonstrate that the prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).

To satisfy the first prong, a plaintiff must prove "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). "A substantial risk of serious harm is one in which the risk is 'so great' that it is 'almost certain' to materialize if nothing is done. The conditions presenting the risk must be 'sure or very likely to cause . . . needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Wilson v. Ryker,* 451 F.Appx. 588, 589 (7th Cir. 2011) (unpublished).

To satisfy the second prong, a plaintiff must show that each defendant had "subjective knowledge of the risk of harm," and that the he or she "personally disregarded that risk." *Grieveson v. Anderson*, 538 F.3d 763, 755 (7th Cir. 2008). It is not enough that a prison official would or should have known that that the prisoner was at risk: the official must actually know of and disregard the risk to incur liability. *Lewis*

6

*v. Richards*, 107 F.3d 549, 552-54 (7th Cir. 1997). This is because neither ordinary negligence nor even gross negligence in the tort sense are enough to give rise to liability under § 1983. *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991).

Plaintiff fails to satisfy either prong of the above test. First, plaintiff fails to create a question of fact as to whether he was incarcerated under conditions imposing a serious risk of harm. Prisons are inherently dangerous places, so a general risk of violence is not enough to satisfy this prong. *See Wilson v.* Ryker, 451 F.Appx. 588, 589 (7th Cir. 2011) (unpublished). Plaintiff must show that Caballero posed a specific risk to him that was "so great" that it was "almost certain to materialize" if nothing was done. *Id.*

Feldner and Lind state that they had never observed inappropriate behavior by Caballero toward plaintiff and that plaintiff had never complained about Caballero prior to the incident. Plaintiff does not dispute these statements, nor does he put forth any evidence suggesting that Caballero had engaged in sexually inappropriate behavior toward him or others prior the incident. In short, because plaintiff fails to identify a tangible or imminent risk of harm that Caballero posed to him prior to the attack occurring, plaintiff's claim must be dismissed.

Plaintiff also fails to satisfy the second prong of the test because he fails to show that defendants had subjective knowledge of the risk Caballero posed to him. The only statements from plaintiff indicating that Feldner and Lind may have had advance notice of the attack is plaintiff's statements that, when Caballero was making suggestive comments to him, plaintiff spoke in a loud voice so that defendants could overhear what he was saying. However, this is insufficient to establish that defendants did in fact

overhear plaintiff's comments, especially in light their statements that the first they learned of Caballero's conduct was nearly two hours after the incident occurred.

In fact, plaintiff appears to concede in his response to defendants' motion for summary judgment that defendants did *not* observe Caballero's conduct toward plaintiff prior to him grabbing plaintiff's buttocks. Plaintiff focuses on a video presumably produced by defendants during discovery. In describing the video, plaintiff repeatedly references the fact that "you'll see no defendants monitoring the hallway/dayroom at all. Also you will see no defendants monitoring the hallway/dayroom when [plaintiff's] buttocks was grabbed by Jose [Caballero] and when he forced himself in [plaintiff's] cell/room." (Docket #52 at 15.) Plaintiff goes on to argue, "If (defendants) Tom Feldner and Easton [Lind] were monitoring the dayroom/hallway, defendants *should've* at least seen[] when [Caballero] grabbed [plaintiff's] buttocks or seen[] when he forced himself into [plaintiff's] cell/room." (*Id.*) (emphasis added).

In other words, plaintiff argues that defendants did not know of the threat to him because they were not monitoring the hallway/dayroom as they should have been. While defendants' failure to properly monitor the hallway/dayroom may give rise to a claim of negligence, negligence is an insufficient basis for liability under §1983. Thus, because plaintiff fails to create a question of fact as to whether defendants had actual knowledge of the risk of harm to plaintiff, I must dismiss his claims.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (Docket #51) is **DENIED**.

**IT IS ALSO ORDERED** that defendants' motion to strike plaintiff's motion for summary judgment (Docket #53) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #43) is **GRANTED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 6th day of April, 2016.

             s/ Lynn Adelman

             LYNN ADELMAN
             District Judge

9

Case 2:14-cv-00850-LA   Filed 04/06/16   Page 9 of 9   Document 54